UNITED STATES OF AMERICA                                         Case Number: S2 06 CR 311-001

v.

SHARON KING

MOTION FOR MODIFICATION OF SENTENCE DUE TO FIRST STEP ACT OF 2018 AND SECOND LOOK INITIATIVE

COMES NOW, PETITIONER, Sharon King, humbly and respectfully requesting that the Honorable Judge Kenneth M. Karas modify petitioner's sentence for the remaining time spent in Federal custody; as well as the First Step Act of 2018 and Second Look Initiative.

MEMO ENDORSED

FACTS TO SUPPORT YOU HONOR'S DISCRETION FOR GRANTING MODIFICATION

Petitioner was re-sentenced by Your Honor on October 24, 2012 for violations of 21:812, 841(A)(1), 841(B)(1)(A), 841(B)(1)(D), 846: Conspiracy to Distribute and Possess with Intent to Distribute More Than 5 Kilograms of Cocaine and a Quantity of Marijuana. 21:812, 841(A)(1), 841(B)(1)(B): Distribution and Possession with Intent to Distribute more than 500 Grams of Cocaine, 19:924(C)(1)(A)&2: Using and Carrying a Firearm During & in Relation to a Drug Trafficking Crime. Petitioner was committed to the Bureau of Prisons on December 9, 2008 for a term of imprisonment of 120 months followed by an additional 60 months to run consecutively totaling 180 months. This was petitioner's first offense.

Specifically, Your Honor stated on the record at sentencing that due to my efforts while I have been incarcerated, you would have gone below the mandatory minimum if you could have (Sentencing Transcript Page 21, lines 2-4). Also, Your Honor stated that if it were not for the mandatory minimums, you wouldn't not have gone anywhere close to the sentence that was imposed (Sentencing Transcript page 22, lines 17-19).

Pursuant to UNITED STATES v. BOOKER, (2005) 543 US 220, 160 L Ed 2d 621, 125 S. Ct., 738, the Supreme Court held (1) that 18 USCS 3553 (b)(1), which makes the Federal Sentencing Guidelines mandatory, is incompatible with the requirements of the Sixth Amendment and therefore must be severed and excised from the Sentencing Reform Act of 1984, and (2) that 18 USCS 3742 (e), which depends upon the Guidelines mandatory nature, also must be severed and excised. This makes the USSG advisory and allows Your Honor to apply the 3553 (a) factors in a more liberal manner on a case by case basis.

On December 21, 2018, the First Step Act of 2018 implemented law that expanded the definition of Imprisonment. Pursuant to section 504 of the First Step Act, Home Confinement has been added as a means to satisfy a term of imprisonment under section 5F1.1 of the advisory USSG. Pursuant to part (C), Imprisonment of the USSG 5C1.1, Imposition of a Term of Imprisonment (e) Schedule of Substitute punishments, (3) One day of imprisonment for one day of Home Detention. As long as the initial sentence conforms with the Guidelines of Imprisonment, within the (advisory) range of the minimum and maximum term of incarceration, the Court may use it's discretion to credit one day of imprisonment for one day of Home Confinement (detention).

The First Step Act of 2018 has in essence empowered the Court to expand its discretion in subsequently modifying or lowering a term of incarceration. As stated by the Hon. Judge Gleason, now retired District Judge for the Western District of New York, the First Step Act of 2018 allows for the District Court Judge(s) to exercise discretion when circumstances are compelling enough to warrant a break when dealing with a non-violent offenders.

Since Petitioners re-sentencing hearing before Your Honor, I have not become discouraged. Your Honor even put on the record at my sentencing hearing that I have applied myself to every program available and in Your Honors view, that would have earned me a nonguidelines sentence. Your Honor went on to state that "frankly, I think Ms. King's efforts are the best I've ever seen and certainly quite exemplary in terms of her efforts to get past this". (Sentencing Transcript pages 21, lines 1-5). In

evidenced by my Progress Report (see attached) as stated by inmate manager dated November 26, 2019, "Inmate King continues to take available and multiple opportunities." The Progress Report also has input from my supervisor stating " I am here to inform that she has been a very valuable asset to food service and trains new food service inmates. (She is) an excellent cook, performance is outstanding, above average". Since my re-sentencing, where Your Honor took time to note my accomplishments up to that point (Sentencing Transcripts Page 20, lines 18-25) I have accomplished the following coursework, Female Etiquette, Art Program, Basic Bank CAT II, Interviewing Skills, Food Management, Internet Navigation, Employment RPP#2, Personal Growth RPP#6, Release Requirements RPP#5, Personal Finance RPP#3, Health and Nutrition RPP#1, Community Resources 1 & 2, Crochet, Art Program 2, Officiating Rules for Sports, Yoga/Stress Reduction Program, Art Program 3 & 4, officiating Rules 2, Yoga and Stress Reduction2, Zumba, Intro to Musical Instruments, Run Fit at Camp, Cook Apprenticeship with U.S. Department of Labor, Baker Apprenticeship with the U.S. Department of Labor, Meat Cutter Apprenticeship with the U.S. Department of Labor, Office Manager Apprenticeship with the U.S Department of Labor, and am currently the Kitchen Manager at the Danbury facility where I am housed. I have successfully completed a myriad of coursework. I participated in each and every class that was offered at the facility. I have been incident free and I have attached my review to validate that.

Your Honor, I have been in federal prison for more than a decade. My family has suffered from my absence, as I left behind my three young children when their father, who was also my co-defendant, and I were incarcerated. My oldest, a son has struggled with intermittent homelessness and depression. My two daughters are left trying to navigate through life without either parent. Although my children's Godmother, Keisha Miles, has been taking care of my children throughout the last decade, she is a three time breast cancer survivor having undergone a double mastectomy. Recently, she had to undergo another surgery on December 16, 2019, as the cancer has returned with a fury, unfortunately spreading to her lungs. Their Godmothers mother, Catherine Miles, is now taking care of the children, but she is 76 and not as equipped to deal with them unassisted. Yesterday, January 4, 2019, my daughter Donashia had a manic breakdown, and had to be hospitalized at Four Winds Psychiatric Hospital, being diagnosed with bi-polar and defiance disorder. I am pleading for some mercy as I have always been strong, but recently have found myself extremely overwhelmed. Your Honor also noted that my family circumstances are quite tragic, and that I have been a model of fortitude in trying to get past this and make myself not only a better person but somebody who is going to do everything she can to constructively move forward (Sentencing Transcript page 23, lines 1-5). Your Honor goes on to note that if Your Honor was not confined by mandatory minimums, I would have been originally sentenced to 60 months in total for my role in the crimes I committed(lines 11-14). Your Honor, the return of their mother will ultimately relieve the caregivers of the stress and burden of caring for my children and possibly save my daughter from self-destructing and being over medicated.

Your Honor, since my incarceration 11 years ago, I have rehabilitated myself and have committed to never making the decision to break the law of this land again. I feel remorse at the pain I have cause and am eager to become a productive member of society again where I can pay back my debt and rebuild my life. Your Honor, please take into consideration that it is possible for you to modify my sentence, and sentence me to spend the remaining portion of my incarceration on Home Confinement under the First Step Act of 2018, which would only be converting the remaining 11 months from January 2020 to November 2020 which is my scheduled home confinement date currently. I am humbly request this relief after serving over 90% of my sentence in a correctional facility.

Your Honor I have undergone a transformation. Please weigh my rehabilitation against the perceived retributive benefit to society of keeping me incarcerated in this facility another year. It was clear from Your sentencing transcript that Your Honor wanted to find an alternative to such a harsh sentence. The First Step Act has created an alternative to still have me imprisoned, and allow Your Honor to modify that form of imprisonment to Home Confinement. Your Honor, I humbly ask for compassion and mercy, and a second look at the way my sentence is currently structured.

WHEREFORE, Petitioner is respectfully and humbly requesting Your Honor will modify petitioners current type of incarceration from Danbury Woman's Prison Camp to Home Confinement based on the First Step Act reform. Pro se litigant(s) pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. If the Court articulates that the litigant could be entitled to relief, it should move in a favorable manner towards the defendant in doing so. HAINES v. KERNER, 30 LED 2D 652, 404 US S.Ct., 519.

Respectfully submitted,

Sharon King, pro se

CERTIFICATE OF SERVICE
I certify that I have served a true and correct copy of the following: MOTION FOR MODIFICATION OF SENTENCE


upon the following address: UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
HONORABLE JUDGE KENNETH M. KARAS
~~HON. CHARLES L. BRICANT JR~~
FEDERAL BLDG & COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

which was hand delivered to prison authorities on the grounds of the Federal Prison Camp, located in Danbury CT, on this 5th day of January 2020.

SO SERVED: *Sharon King*

Litigation is deemed FILED at the time it was delivered to prison authorities. HOUSTON v. LACK, 101 L. Ed. 2d 245 (1988).

The Government is to respond to this submission by 1/30/20.

So Ordered.

*KMK*
1/21/20

The Clerk of the Court is directed to mail a copy of this Order to the Plaintiff

1    MS STERNHEIM:  I realize it's a narrow window, but I
2    request that you impose the absolute minimum.
3        THE COURT:  Okay.  Mr. Wible, do you have anything to
4    say?
5        MR. WIBLE:  No, your Honor.
6        THE COURT:  Ms King, is there anything you'd like to
7    say before I impose sentence?
8        THE DEFENDANT:  No.
9        THE COURT:  When I read the recommendation, it was
10   above the mandatory minimum, ten plus five, and what I was
11   going to say, what I was going to do before I realized that I
12   think the calculation is wrong, something that's not mentioned
13   in the presentence report, and maybe because the probation
14   officer didn't know about it, but it's discussed in Ms King's
15   letter, you may recall I had a little post-it note when I gave
16   you the document, but Ms King has, to quote her words, applied
17   herself to every program that's been available to her and she
18   lists them in her submission.  40 hour drug program.  She's on
19   the wait list for the 500 hour program.  She's done vocational
20   training, culinary arts, the blueprint reading class,
21   industrial soldering, positive attitude prerelease class, self
22   esteem assertive class, parenting, building family and future,
23   child development, she's earned her GED, and she's completed
24   three semesters at Ashworth Community College for business
25   management, and a cook's apprenticeship from the Department of

1   Board and Labor. My view is that all of that would be grounds
2   for a nonguideline sentence. Even if it was higher, I would
3   come back down to the mandatory minimum, and frankly I would go
4   below the mandatory minimum if I could. I don't always say
5   that. But frankly, I think Ms King's efforts are the best I've
6   ever seen and certainly quite exemplary in terms of her efforts
7   to get past this.
8        Ms King, I hope you'll keep it up and I just want that
9   on the record.
10        MS STERNHEIM: Thank you.
11        THE COURT: We've gone through the calculations, but
12   just so the record is clear, because there are some changes
13   from the presentence report, because Judge Robinson's finding
14   could be interpreted to conclude that there was no less than
15   15, that the offense conduct involved no less than 15 and no
16   more than in the high 40s kilograms of cocaine, I'm willing to
17   assume the low end, so 15. That yields a drug equivalency of
18   3,000 kilograms of marijuana. There's another kilogram that
19   gets added plus the 453 grams. What that does is it takes us
20   into a lower range. So looking at the drug equivalency table,
21   which by the way is the same whether you use the 2010 or 2011
22   manual, but that results in a base offense level of 34, because
23   the cutoff there is between 3,000 and less than 10,000
24   kilograms of marijuana. And the only way one gets to a level
25   36 is if you get to at least 10,000 kilograms. The only way

1   you get to that is if you get to 49, maybe 49 and a half
2   kilograms of cocaine. And I'm not willing to interpret high
3   40s to mean 49 or 49 and a half.
4       And then I will adopt Judge Robinson's downward
5   departure under 5H1.5 for employment circumstances and 5H1.6
6   for family circumstances, which brings the offense level down
7   even more to 30. There are no other adjustments. And Ms King
8   is in Criminal History Category I because she has no prior
9   convictions whatsoever. And as we discussed, what that means
10  is that the guideline range for Count 1, which is the (b)(1)(A)
11  conspiracy, is 120 to 121 months. The guideline range for
12  Count 3, which is the (b)(1)(B) cocaine distribution charge,
13  the substantive charge is 97 to 121, the guideline range for
14  Count 4 which is the (b)(1)(D) marijuana charge is sixty
15  months, and then there's the mandatory consecutive sixty months
16  in connection with Count 5.
17      As I said, if I didn't think the mandatory minimums
18  applied here, I wouldn't go anywhere near close to the
19  mandatory minimums. While Ms King's role in this was very
20  serious, it was nowhere near as substantial as the co-defendant
21  in this case. There's certainly information in the presentence
22  report that suggests that Ms King was in a relationship that
23  led her to make some bad decisions. Again, I don't think she
24  offers it as an excuse, and I'm not either, but I think it's
25  important to put all this into context. She has no criminal

1  history. The family circumstances are quite tragic here. And

2  as I said, Ms King has been really a model of fortitude in

3  trying to get past this and make herself not only a better

4  person but somebody who is going to do everything she can to

5  constructively move forward. And so anything beyond the

6  mandatory minimum here I think is completely unnecessary.

7  So therefore, it's the judgment of the Court that in

8  connection with Count 1, Ms King be sentenced to the custody of

9  the Attorney General for a period of 120 months which is the

10 mandatory minimum. With respect to Count 3, this is the

11 substantive distribution charge, I'm going to impose a sentence

12 of sixty months to run concurrent with the sentence in Count 1,

13 to make the point as to what I would be more inclined to do if

14 I didn't have to follow the mandatory minimums. With respect

15 to Count 4, it would be the same sixty months to run concurrent

16 with Counts 1 and 3. And then I'm going to impose the

17 consecutive sixty months in connection with Count 5.

18 Getting back again to Ms Sternheim's point, I don't

19 know that I agree with her interpretation that I'm allowed to

20 take a pass because it seems to me that not sentencing Ms King

21 again would not be in accord with the Supreme Court's decision

22 in Abbott. The reason the sentence was as low as it was is

23 because the mandatory consecutive was not applied. And that

24 would lead to the vacatur of the sentence. But even if I did

25 agree that I have discretion, I think it's my view that the

1   exercise of that discretion is that it's appropriate to impose
2   a mandatory consecutive 5, precisely because of what Abbott
3   says. And that's not a statement on mandatory minimums one way
4   or the other; it's a statement on what the Supreme Court has
5   said. So that has to be consecutive. So the total sentence is
6   180 months, but I've already broken down what's consecutive to
7   what and what's concurrent with what.
8           In terms of the conditions of supervised release, does
9   anybody have any problem if I just reimpose what Judge Robinson
10  imposed? I mean, it seems to me I can't go beyond that anyway,
11  given the limited nature of the remand. Unless there's
12  something you object to in the conditions Judge Robinson
13  imposed.
14          MS STERNHEIM: No.
15          THE COURT: Mr. Wible?
16          MR. WIBLE: No, your Honor.
17          THE COURT: I have to, I guess, reimpose the $400 of
18  special assessments, 100 per count. Was there a forfeiture
19  order entered in the first go-round?
20          MR. WIBLE: On the train up here I noticed that Judge
21  Robinson did orally order forfeiture as part of the sentencing.
22  I did not go back and confirm whether there was or whether
23  there wasn't. I apologize for that. If there wasn't, I don't
24  intend to submit one at this point.
25          THE COURT: So there's no point.

MR. WIBLE: I think that's right.

THE COURT: Okay. So there's no forfeiture then. I'm not going to impose a fine because Ms King cannot afford one. And the conditions of supervised release that were imposed by Judge Robinson the first time are reimposed.

Ms King you have a right to appeal the sentence. You have to file a notice of appeal within 14 days of when the judgment is entered.

Are there any open counts that need to be addressed?

MR. WIBLE: There was an underlying indictment. I think those are already dismissed.

THE COURT: Then they're dismissed again. Anything else that needs to be done?

MR. WIBLE: I don't believe so, your Honor.

MS STERNHEIM: No.

THE COURT: All right. Ms King, this is a very high sentence. It's higher than I would have imposed if I didn't have the mandatory minimums. And I meant what I said about the work that you've done since you were sentenced the first go-round. And all I can do is encourage you to keep it up. Sometimes people in your shoes do these things so they and their lawyers can say to the judge, look, I'm really trying. I don't think that's why you did it here. I think you did it for your kids, for yourself, and that's why you need to keep doing it. It's really all about you and them going forward. So I do

1   wish you luck.
2           Ms Sternheim, as always, thank you.  I'll give you
3   back the order.
4           MS STERNHEIM:  Thank you.
5           THE COURT:  We're adjourned.
6           Marshals, thank you.
7           (Record closed)



**PRESCHOOL**

61-08 220th street Bayside, NY 11364 Tel: (718)-428-7700

June 5, 2019

Ms. Sharon King
REG# 84532-054
Danbury Federal Prison Camp
33 ½ Pembroke Road
Danbury, CT 06811

Attn.: Ms. Cocho
       Camp Counselor

### RE: Employment Offer Letter

Dear Ms. King:

We are pleased to offer you employment at MetroKids Preschool as Head Chef at 61-08 220th Street, Bayside, New York 11364. In this position, you will report directly to the school director, Sabrina Kroski. You are required to report and start your duty at MetroKids Preschool upon your release from Danbury Prison Camp, and with the permission of the Bronx Community Reentry (Halfway House) Center upon your arrival at their facility.

Your duties as Head Chef, salary and vacation compensation will be further discussed with you in person.

Your employment will be subject to a probationary period of three (3) months from the start date of employment. Confirmation of your employment after probation will be subject to satisfactory performance. After the probation period, the Employment Offer Letter will be replaced by an Employment Contract.

I hope that you find this offer acceptable and we are looking forward to working with you.

Sincerely,

Joe Chan
President of Metrokids Preschool



https://s3.amazonaws.com/edco-production/paperclip/media_assets/a79c9039-8a73-41b9-... 11/12/2017



# The United States Department of Labor

## Office of Apprenticeship

### Certificate of Completion of Apprenticeship

This is to certify that

**Sharon King**

has completed an apprenticeship for the occupation

**Meat Cutter**

under the sponsorship of

**Danbury, CT**

in accordance with the basic standards of apprenticeship established by the Secretary of Labor



Dr. B. Belica / [signature]
Apprenticeship Coordinator

January 23, 2019
Date Completed

[signature]
Administrator, Office of Apprenticeship

# The United States Department of Labor

## Office of Apprenticeship

### Certificate of Completion of Apprenticeship

This is to certify that

**Sharon King**

has completed an apprenticeship for the occupation

**Office Manager/Administrative Services**

under the sponsorship of

**FCI Danbury, CT**

in accordance with the basic standards of apprenticeship established by the Secretary of Labor

October 1, 2019
_Date Completed_

Dr. B. Belica
Apprenticeship Coordinator



_Administrator, Office of Apprenticeship_

# CERTIFICATE OF COMPLETION

The FCI Danbury Recreation Department Presents This Certificate To:

## KING, SHARON

In Recognition of Your Completion of The:

### ZUMBA



Recreation Staff: R.BLANCO

Date: 6/8/19