UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SHARON KING,

Defendant.

No. 06-CR-311 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

On July 28, 2008, Defendant Sharon King ("King" or "Defendant") was found guilty, after a jury trial, of three separate drug-related offenses in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(D), and 21 U.S.C. § 846, and of carrying a firearm in connection with drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*See* Judgment in a Criminal Case ("Judgment") (Dkt. No. 84); *see also* Dkt. (minute entries for July 28, 2008).) Originally sentenced by Judge Stephen Robinson on December 9, 2008, (*see* Judgment 2), King was re-sentenced by this Court on October 24, 2012 in light of intervening Supreme Court precedent, (*see* Dkt. (minute entry for Oct. 24, 2012)). *See also King v. United States*, No. 06-CR-311, 2016 WL 11268958, at *1 (S.D.N.Y. June 17, 2016) (discussing the background to King's habeas petition). On January 15, 2020, King filed a Motion for modification of her sentence, invoking *United States v. Booker*, 543 U.S. 220 (2005), the First Step Act of 2018, and the "Second Look Initiative" ("the Motion"). (*See* Mot. for Modification of Sentence ("Mot.") (Dkt. No. 225).)[1] For the reasons stated herein, the Motion is denied.

---

[1] Although Defendant invokes something called the "Second Look Initiative" in the title and first sentence of her Motion, (*see* Mot. 1), she fails to address this "Initiative"—or even identify what it is—in the body of her Motion. Defendant may be referring to the Second Look Act of 2019, a piece of legislation introduced in the U.S. Senate by Sen. Cory Booker (D-NJ),

1

I. Background

On December 9, 2008, King was sentenced to a combined total of 121 months' imprisonment for the four counts on which she had been convicted. (Judgment 2; *see also* Dkt. (minute entry for Dec. 9, 2008).) King appealed the conviction and sentence, (*see* Dkt. No. 85), while the Government cross-appealed King's sentence, particularly Judge Robinson's decision to make King's firearm sentence run concurrently with the sentence for her drug convictions, (*see* Dkt. No. 88). The Second Circuit affirmed King's conviction and sentence, *see United States v. Dewar*, 375 F. App'x 90, 94 (2d Cir. 2010) (summary order). However, the Supreme Court subsequently vacated the judgment and remanded the case to the Second Circuit for further consideration in light of *Abbott v. United States*, 562 U.S. 8 (2010), which held that convictions under 18 U.S.C. § 924(c) require a consecutive sentence, regardless of any other mandatory minimum sentence. *See United States v. Dewar*, 562 U.S. 1254 (2011). The Second Circuit affirmed King's conviction but vacated and remanded her sentence "for the limited purpose of allowing [this Court] to impose [a] sentence[] in accord with *Abbott*." (*See* Dkt. No. 106.) On October 24, 2012, the Court resentenced King to 180 months' imprisonment. (*See* Dkt. (minute entry for October 24, 2012).) During the sentencing, the Parties agreed that the crimes of conviction included a mandatory minimum sentence of 120 months for Count One, and a mandatory minimum of 60 months for Count Five (King's 18 U.S.C. § 924(c) conviction), and that the latter must be served consecutively with the sentences of all other Counts. (*See* Government Response ("Gov't Response") Ex. A ("Sentencing Tr."), at 13–14 (Dkt. Nos. 230,

---

*see* Second Look Act of 2019, S. 2146, 116th Cong. (2019), and in the U.S. House of Representatives by Rep. Karen Bass (D-CA), *see* Second Look Act of 2019, H.R. 3795, 116th Cong. (2019). Neither the Senate nor the House has approved the legislation. Accordingly, the Court declines to consider this issue.

230-1).) The Court therefore imposed concurrent sentences for the three drug-related counts, but, as required by *Abbott*, imposed a consecutive sentence for Count Five. (*See id.* at 23–25.) In imposing this sentence, the Court acknowledged that it would have sentenced King below the mandatory minimum, but was not permitted to do so. (*See id.*)

On October 24, 2013, King filed a motion to vacate or set aside her conviction and sentences pursuant to 28 U.S.C. § 2255. (*See* Dkt. No. 145.) In two rulings, on June 17, 2016 and November 2, 2016, the Court denied this § 2255 motion in full. (*See* Dkt. Nos. 164, 169.)

On January 15, 2020, King filed the instant Motion. (*See* Mot.) On February 10, 2020, the Government filed its Response. (*See* Gov't Response.) On February 27, 2020, King filed an "addendum" as her Reply. (*See* Dkt. No. 232.)

## II. Discussion

In her Motion, King advances several arguments in favor of a sentence modification. First, she asserts that the Supreme Court's decision in *Booker* permits the Court to "apply the [§] 3553(a) factors in a more liberal manner." (Mot. 1.) Second, King argues that the "First Step Act of 2018 . . . expanded the definition of [i]mprisonment" such that home confinement may be a "means to satisfy a term of imprisonment under section 5F1.1" of the federal guidelines. (*Id.*) Third, King emphasizes her exemplary record in prison, her participation in a myriad of programs and courses, and her sympathetic family circumstances. (*See* Mot. 1–2.)

The Court concludes it has no legal power to modify King's sentence. First, the Supreme Court's decision in *Booker* concerned the federal sentencing guidelines, not statutory mandatory minimum sentences. *See* 543 U.S. at 226 ("The question presented in each of these cases is whether an application of the Federal Sentencing Guidelines violated the Sixth Amendment."). Unlike the federal guidelines, statutory commands regarding minimum sentencing, including

those that underlie King's sentence, remain binding even after *Booker*. *See Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (explaining that "sentencing courts remain bound by the mandatory minimum sentences prescribed in [statutes]"); *United States v. McCown*, 395 F. App'x 759, 762 (2d Cir. 2010) (same).

Second, no part of the First Step Act of 2018 (the "Act") is applicable to King. Insofar as King invokes those provisions of the Act that permit courts to resentence defendants sentenced for certain crack cocaine offenses, *see United States v. Rose*, 379 F. Supp. 3d 223, 227 (S.D.N.Y. 2019) (explaining that the First Step Act "made retroactive" several changes in sentences for crack cocaine-related offenses), such provisions have no bearing on King's sentence. King's relevant convictions were based on possession and distribution of a sizeable quantity of cocaine generally (rather than on crack cocaine specifically). *See King*, 2016 WL 11268958, at *1 (discussing King's convictions for "distributing, and possessing with intent to distribute, at least 500 grams of cocaine"). Similarly, while other portions of the Act expanded the scope of who may qualify for relief from statutory mandatory minimums under 18 U.S.C. § 3553(f)'s "safety valve," *see United States v. Dunnigan*, No. 15-CR-202, 2019 WL 4254028, at *2 (W.D.N.Y. Sept. 9, 2019) (discussing how § 402 of the Act effected changes in safety valve eligibility under 18 U.S.C. § 3553(f)), these provisions were not made retroactive and thus cannot offer King relief, *see id.* at *1 (noting that the "[d]efendant was sentenced prior to the enactment of the First Step Act, and so its forward-looking provisions simply do not apply to him"); *see also United States v. Wiseman*, No. 18-3904, 2019 WL 3367615, at *3 (6th Cir. July 26, 2019) (explaining that "the First Step Act is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of the date of enactment'" (citation and alteration omitted)); *United States v. Rodriguez*, 770 F. App'x 411, 412 (9th Cir. 2019)

(explaining that "both the plain language of 18 U.S.C. § 3553(f) and longstanding precedent dictate that safety valve eligibility is determined at the time of sentencing and is not available retroactively").

Additionally, insofar as King believes that she is eligible for early release under the Act's compassionate release provision, she must first exhaust her administrative remedies within the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, upon motion . . . of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . ."); *see also United States v. Vasquez*, No. 11-CR-389, 2020 WL 5038006, at *1 n.1 (S.D.N.Y. Aug. 26, 2020) (noting that "[t]he compassionate-release statute authorizes a district court to reduce a sentence only after a defendant has exhausted his administrative remedies"). Indeed, this Court has recently reminded King of this very requirement in the course of denying her Emergency Motion for Compassionate Release Due to Covid-19. (*See* Emergency Mot. for Compassionate Release (Dkt. No. 240); *see also* Dkt. No. 241 (denying King's emergency motion via memorandum endorsement and explaining that because King has not fully exhausted her administrative remedies, the Court is without power to consider her compassionate release request).) Similarly, insofar as King suggests that § 504 of the Act permits the Court to convert the remainder of King's sentence to home confinement, (*see* Mot. 1), she is mistaken. Section 504 of the Act does not even mention home confinement. *See* First Step Act of 2018, Pub. L. No. 115–391, § 504, 132 Stat. 5194, 5233–34 (2018). Several other provisions of the First Step Act expand the use of home confinement in various ways—for example, Section 602 directs the Bureau of Prisons to "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted" under preexisting law. *Id.* § 602, 132 Stat. at 5238; 18 U.S.C. § 3624(c)(2). However, King points to no provision (nor is the Court

aware of any) that permits the Court to accelerate her eligibility for home confinement. The Court notes, however, that the Government has represented that King will be eligible for possible placement in home confinement in November 2020. (*See* Gov't Response 3.)

Finally, the Court acknowledges the compelling character of King's arguments about her exemplary record and family situation. Indeed, already at her sentencing, the Court acknowledged that King has "applied herself to every program that's been available to her," that her efforts "are the best I've ever seen and certainly quite exemplary in terms of her efforts to get past this," that her "family circumstances are quite tragic," and that she "has been really a model of fortitude in trying to get past this and make herself not only a better person but somebody who is going to do everything she can to constructively move forward." (*See* Sentencing Tr. 20, 21, 23.) However, as the Court explained at the time, it has no discretion to go below the mandatory minimum sentences required by Congress. (*See id.* at 19, 20–21.) And as explained above, no intervening changes of law have altered this.

### III. Conclusion

For the reasons discussed above, the Motion is denied.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 225).

SO ORDERED.

DATED: October 7, 2020
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE