UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

UNITED STATES OF AMERICA,
    *Plaintiff,*
  v.

7:06-CR-0311-3 (KMK)

SHARON KING,
    *Defendant.*

------------------------------------------------x

## MOTION FOR EARLY TERMINATION
## OF SUPERVISED RELEASE

**NOW COMES** SHARON KING, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 United States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c).

Under the same rule of criminal procedure, no hearing is required if defendant waives such a hearing and the government is given the opportunity to respond in opposition. I both waive the hearing, request this Court give the government that opportunity, and decide this matter without holding such a hearing.

## I.   PROCEDURAL HISTORY

I was indicted in 2006 along with two co-defendants, as part of a conspiracy to distribute cocaine and marijuana. That indictment was twice superseded and all pretrial attempts to suppress evidence and for further discovery failed. *United States v. Dewar, et. al.*, 489 F.Supp.2d 351 (S,D.N.Y. 2007). After that order, I decided to proceed to trial where a jury found me guilty on Counts 1ss, 3ss, 4ss, and 5ss on July 28, 2008.

I was sentenced to serve 121 months in prison for Counts 1 & 3, sixty months for Count 4, and no term of incarceration for Count 5, all were run concurrently. ECF No. 84. This set in motion a chain of appeals and cross-appeals which twice visited the Second Circuit. *United States v. Dewar et. al.,* Nos. 08-5958, 08-6222-09-1338, 10-0403. While

pending *Certiorari* review, the Supreme Court decided *United States v. Abbott*, 562 U.S. 8 (2010) which held that sentences for 18 U.S.C. §924(c) convictions must carry with them consecutive sentences.

My case went back through review at the Second Circuit before being remanded to this Court for re-sentencing. My re-sentencing was held before this Court on October 24, 2012 wherein five consecutive years was added to my sentence for Count 5, and my incarceration term was adjusted to include a total of 180 months in prison. ECF No. 150.

The following October, just before my deadline to file had expired, I moved to Vacate my sentence under *habeas* review by filing a Motion pursuant to 28 U.S.C. §2255 on October 24, 2013. Nearly three years later, that request for *habeas* review and relief was dismissed on June 17, 2016. ECF No. 164.

I later moved to reduce my prison term as I was convicted of a qualifying offense under §404 of the First Step Act, but that, too, was denied. ECF Nos. 226 – 243.

Four months later I was given a gift: on January 19, 2021, then-President Donald J. Trump granted me Executive Clemency to me and six other inmates, commuting the remainder of our sentences. ECF No. 247. This Clemency Grant left the term of supervised release in place along with all conditions and requirements thereof.

I was officially released from BOP custody the next day, January 20, 2021, and have now served one year and ten months of supervision. Soon after I was statutorily eligible to do so, I moved for early termination of my supervised release term. ECF No. 253. The government responded in opposition on March 23, 2022 [ECF No. 254], and no order by the Court has been recorded in that matter since.

Because that issue remains open, I now file a formal pleading and move the Court for early termination of my supervised release term.

## II.   JURISDICTION, AUTHORITY, AND RELEVANT CASE LAW

This Court is given the statutory authority to grant early termination to supervised release sentences by 18 U.S.C. §3583(e)(1). The Court may:

"[A]fter considering the factors set forth in section 3553(a)(1), (a)(2)(B),

Page 2

> (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) –
>
>> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.*

The Court, after considering the above-enumerated sentencing factors, may terminate a term of supervised release even if that term was imposed pursuant to a mandatory minimum. *United States v. Johnson,* 529 U.S. 53, 60 (2000) (Justice Kennedy, writing for a unanimous Court that the defendant, who was subject to a three-year mandatory minimum term of supervised release, "having completed one year of supervised release, he may also seek relief under 3583(e)(1).")

> "A district court may terminate supervised release before the expiration of a mandatory minimum period. As the Court of Appeals for the Seventh Circuit explained in *Pope v. Perdue,* 889 F.3d 410, 414 (7th Cir. 2018), 18 U.S.C. § 3583(a) requires a court to impose a minimum term of supervised release when it is required by another statute…[t]he 'impos[tion] of a sentence,' however, is distinct from *modification or termination* of a sentence[.] *Id.* The *Pope* court concluded that Congress did not intend for 'a minimum term of supervised release [] to constrain the court's ability to later terminate it.'
>
> "All courts, as far as this court is aware, agree with this position that early termination power exists even when a mandatory minimum was required. See *United States v. Spinelle,* 41 F.3d 1056, 1060 (6th Cir. 1994)…" *United States v. Trotter,* 321 F.Supp.3d 337, 360 (E.D.N.Y. 2018).[1]

This reveals an important conclusion: early termination requests are distinct from sentencing reductions. Instead, they are separate post-conviction modifications requests and follow different rules, without some of the constraints of sentencing decisions. One of these constraints, shown above, is that mandatory minimums do not limit the Court's

---

1  Indeed, this has been the opinion in every Circuit Court of Appeals to address the issue head-on. See *United States v. Coleman,* No 16-10370 (5th Cir. 2017), and *United States v. Carpenter,* 803 F.3d 1224, 1229, 1241 n.4 (11th Cir. 2015). The Second Circuit has, as of today, punted the issue without deciding it. *United States v. Vargas,* 564 F.3d 618 at fn. 3 (2nd Cir. 2009)(assuming without deciding the issue, relying instead on *Spinelle and United States v. Johnson,* 529 U.S. 53, 60 (2000).

authority to terminate a term of supervised release before that minimum term has been completed. Another constraint removed from post-conviction modification decisions is the consideration of punishment, seriousness of the crime of conviction, and promoting respect for the law.

These three considerations are limited only to the imposition of a prison sentence, not a supervision term. The removal of all these constrains are illuminated when the language §3583(e) is analyzed and the omission of factors (a)(2)(A) and (a)(3) is recognized.

For the same reason, the Court maintains authority to terminate a supervised release term when the defendant's plea agreement contains a waiver of appeal rights. See, *inter alia, United States v. Mabry,* 528 F.Supp.3d 349 (E.D. Pa. 2021) (modifications of a sentence do not qualify as appeals or collateral attacks and that modifications under §3582(c)(2) and §3583(e)(1) are not barred by waivers of appeal or collateral attacks). More broadly, *Mabry* quotes Hon. Judge Padova's reasoned opinion in *United States v. Crews,* No. 10-CR-663-5, 2020 WL6581430, at *2 (E.D. Pa. Nov. 10, 2020):

> "While [defendant] waived the right to appeal and collaterally attack his sentence in his Guilty Plea Agreement, he did not waive the right to file any other sort of motion with respect to his sentence. The instant motion does not constitute an appeal of [defendant's] sentence, request reconsideration of his sentence, or ask us to reverse or vacate any part of his sentence. We therefore conclude that the instant Motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e) does not constitute an appeal or collateral attack of [defendant's] sentence, which would be covered by the appellate waiver and, accordingly, we conclude that [defendant] did not waive his right to bring the instant Motion in his Guilty Plea Agreement." *Marby* at 355 (quoting *Crews* at *2).

Therefore, this Court has the authority to grant early termination here. Precedent confers wide latitude in making that decision.

For many years, early termination of supervised release was considered an exceptional remedy, only "occasionally" justified. *United States v. Lussier*, 104 F.3d 32, 36 (2nd Cir. 1997). It was not warranted as part of the normal course of a sentence. *United*

Page 4

*States v. Fenza*, No. 01-CR-00921-3(ADS), 2013 WL 3990914 at *2 (E.D.N.Y. Aug 2, 2013). Simply complying with the conditions of supervision, without exceptionally good conduct or changed circumstances not contemplated at original sentencing, were not enough to warrant early termination. *Lussier* at 36, and *Fenza* at *2.

Through the last decade, precedent and policy shifted away from viewing early termination as exceptional, and began to treat it as a normal course of a sentence for many defendants. The Second Circuit itself recognized this and reversed its position on the matter from *Lussier* in 2016.

> "So long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant. Cf. *United States v. Vargas*, 564 F.3d 618, 623-24 (2d Cir.2009) (holding that a district court may extend a term of supervised release under 18 U.S.C. § 3583(e) at any time prior to its expiration, even in the absence of new circumstances)." *United States v. Parisi*, 821 F.3d at 347 (2nd Cir. 2016).

Other Circuit Courts of Appeals have since change course just following the *Praisi* decision. For example, the Ninth Circuit's reversed its position on *Lussier* earlier this year:

> "[W]e are uncertain whether the district court applied the incorrect legal standard our court endorsed in *United States v. Smith*, 219 F. App'x 666, 668 (9th Cir. 2007)... *Smith* incorrectly attributed to the Second Circuit's decision in [*Lussier*], the proposition that early termination is 'reserved for rare cases of exceptionally good behavior.' In fact, *Lussier* did not interpret §3583(e) to necessarily require a showing of exceptional behavior for early termination of supervised release...We take this opportunity to make clear that our unpublished disposition in *Smith* misread *Lussier*, and the 'exceptional behavior' rule as restated in *Evertson* is incorrect as a matter of law." *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022).[2]

These decisions point toward a trend in the judiciary of seeing supervision for the utility it was originally intended to provide. Whereas, at one point, the Second, Third, Seventh, and Ninth Circuits had all required early termination to be a rare occurrence, requiring

---

2  Footnote 2 in P*once* also affirms that the Third Circuit decision, "corrected a similar misreading of *Lussier*." *Id.* (citing *United States v. Melvin*, 978 F.3d 49 (3rd Cir. 2020)).

Page 5

exceptional circumstances to justify the relief, each has since reversed that position.[3]

Coupled with the new language of the updated Guide to Judiciary Policy, Vol. 8 Part E (Post-Conviction Supervision)[4] §360(c), this stance is not simply more-aligned with the original design of supervised release, it conforms to the current policy conclusions of the U.S. Sentencing Commission and Judicial Conference. This is discussed in greater detail below (regarding factor §3553(a)(5)).

In sum, early termination of supervised release was never intended to be imposed in most cases, but only those that need it. Later it became so routinely used that, currently, essentially every felony sentence with more than one year in prison includes a term of supervised release. However, terminating that term once its purpose is served should be, and is beginning to be, a routine conclusion to a supervision term.

## III. THE APPLICABLE SENTENCING FACTORS SUPPORT EARLY TERMINATION AS SERVING THE INTERESTS OF JUSTICE HERE

Primarily, 18 U.S.C. §3583(e)(1) requires a district judge to consider whether or not an early termination request, such as this one, is in the interests of justice. To determine what the interests of justice, themselves, are, one must look to the sentencing factors contained in §3553(a).

As discussed above, mandated terms and the punishment goals of sentencing do not apply on post-conviction modification proceedings. Likewise, supervision is not a punishment and post-conviction modification decisions do not consider the sentence's punitive aspects as part of the interests of justice. The same is true for seriousness of the offense and promoting respect for the law: these factors do not weigh into decisions concerning (1) the length of a supervision term imposed, or (2) modifying such term, whether that be termination or altering the imposed conditions..

The remaining factors must then be analyzed to determine if the interests of justice are served by granting early termination, and I argue here that they are so served.

---

3   *Parisi, Melvin, United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015), and *Ponce*.
4   Transmittal 080-40, July 2, 2018.

Page 6

## The Nature and Circumstances of My Convictions, My History and Character, and this Court's Statements upon Resentencing

As a start, the nature and circumstances of the offense give way to my history and character. The Court at my original sentencing weighed this factor *heavily* when imposing my sentence, which ran all counts concurrent while imposing no sentence of incarceration for Count 5: the conviction for 18 U.S.C. §924(c)(1)(A)(i).

After that leniency by Hon. Judge Robinson was appealed all the way to the Supreme Court of the United States, this Court was compelled to re-sentence me with the consecutive 60-month term for Count 5. At re-sentencing, factor §3553(a)(1) was, once again, at the front-and-center of this Court's conflicted decisions about the mandatory nature of the sentence it was force to impose.

> "My view is that all of [the programs completed by that point] would be grounds for a nonguideline sentence. Even if it was higher, I would come back down to the mandatory minimum and, frankly I would go below the mandatory minimum if I could. I don't always say that. But frankly, **I think Ms. King's efforts are the best I've ever seen and certainly quite exemplary** in terms of her efforts to get past [sic] this. Ms. King, I hope you'll keep it up and I just want that on the record." Transcript of Sentencing, Oct 24, 2012, p. 21-ln. 1-9. (Emphasis added).

The analysis of the record and subsequent guideline calculation the court made just after these statements placed my adjusted offense level to 30. With no criminal history at all, this resulted in sentencing range recommendations of:

- Count 1: 97-121 months without statutory minimum, 120-121 with that mandate;
- Count 3: 97-121 months;
- Count 4: 60 months (the statutory maximum); and
- Count 5: 60 months (mandatory and consecutive).

Without the choice to use its discretion for my sentence, this Court was forced to sentence me to a minimum of 180 months of incarceration, which is precisely what happened.

> "As I said, if I didn't think the mandatory minimums applied here, I wouldn't go anywhere near close to the mandatory minimums… She has no criminal history. The family circumstances are quite tragic here. And as I said, Ms. King has been really a model of fortitude in trying to get past this

Page 7

and make herself not only a better person but somebody who is going to do everything she can to constructively move forward." Transcript of Sentencing, Oct 24, 2012, p. 22 ln 17 – p. 23 ln. 6.

This is exactly what I have done: moved forward in a constructive way. Even before my re-sentencing in 2012 I had already completed the 40-hour drug program, was on the waitlist for RDAP, and completed courses and certifications in vocational training, culinary arts, blueprint reading, industrial soldering, positive attitude, self-esteem/assertiveness, parenting, and child development. I had earned my GED already, and taken three semesters of college at Ashworth Community College for business management. *Id.* at p. 20.

After this I completed dozens of other programs. I earned several U.S. Department of Labor certifications in roles designed for running a restaurant business, and many, *many* other self-improvement programs. The list of courses I completed during my years of incarceration are too many to list here, so I am including a copy of my BOP transcript, listing those courses, as an exhibit to this brief.

Among all that I have done and accomplished in the last 14 years, it was the Culinary Arts program at FCI Danbury that made the biggest impact on my future post-release life. During that program that I discovered my talent and desire to become a chef.

Today, I do my best every day to make the most out of the time I was afforded by receiving Executive Clemency. I am the head chef at Nutriplate in Queens, where I have worked for over two years. From the time I was released from BOP custody, in May of 2020, I began work for MetroKids, which closed temporarily during the COVID-19 shutdowns. The same business re-opened in August and I resumed my work there. I have maintained steady employment there since the same month I was released from prison.

I have kept the same job, have lived in the same home, and maintained concrete stability in my life from the day I left prison until today.

## The Remaining Sentencing Factors Also Support Early Termination as Serving the Interests of Justice

Sentencing factors 3553(a)(2)(B)-(C) all consider whether the purposes of supervised release are complete: if deterrence to future criminal conduct has been achieved, if

Page 8

recidivism has been reduced through completing court-ordered treatment, and whether all correctional treatment goals are met.

Recidivism is not an easy thing to measure, and studies are published by many scholarly bodies on the subject. However, this data is not always applicable because demographics like criminal background, location, gender, education, and race are exceptionally difficult to control for simultaneously. One metric that is well-established is the effect of stability in housing and employment on reducing recidivism rates.[5]

Fortunately, the U.S. Sentencing Commission has recently been publishing recidivism data specific to federal offenders that does exactly this. In a study published last year, the data contained shows that deterrence and recidivism reduction have both occurred in my case in significant ways.[6]

A 2017 study found that offenders in Criminal History Category I, with zero prior criminal history points recidivate at rates 80% lower than offenders sentenced in Category VI.[7] The 2021 study, mentioned above, acknowledged that age and criminal history were two of the best predictors of future convictions, but "[c]onsidered together, they are even better predictors of recidivism."[8]

That study contains data which shows the recidivism-rate-intersection of age and criminal history, revealing that my recidivism risk posed at original sentencing in 2008 has been cut in half today, nearly 4x lower than the average rearrest rate for released male offenders,[9] simply because re-offese rates drop as offenders age.[10]

---

5   *The Effect of Housing Circumstances on Recidivism*; (2021) Jacobs and Gottlieb. National Library of Medicine.
6   The data here excludes the USPO Post-Conviction Risk Assessment (PCRA) and Risk-Prediction Index (RPI) analysis and score, which I have not been given access to. It would not be surprising, though, if my RPI score supported my conclusion here.
7   Kyckelhahn and Cooper, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*; (2017) U.S. Sentencing Commission.
8   Cotter, Semisch, and Rutter, *Recidivism of Federal Offenders Released in 2010*; (2021) U.S. Sentencing Commission. Pg 30.
9   31.2% rearrest for offenders aged 30-39 in CHC I compared to 15.0% for offenders the same category aged 50-59.
10  *Id.* at Tables 4 & 5.

The same study also analyzed demographic data to gain even more insight into offender-specific characteristics that alter recidivism rates. This analysis helps highlight the benefits of the immense amount of programming I completed in prison. The data points that show my reduced recidivism risk includes simply being female: women have 17.2% lower rearrest rates compared to the average rates of male federal offenders (35.1% vs, 52.3%).

Adding to this, offenders who complete some college, but did not graduate, are rearrested 15% less than the average. Statistics like this do not compound upon each other, because if they did, this would indicate I posed a net negative recidivism risk. However, they do indicate that my risk of being convicted of a future crime is virtually nominal compared the general U.S. population.[11]

For applicable sentencing ranges, the Court had no choice at sentencing or resentencing but to give me at least five years of supervision, as dictated by statute. However, this Court also expressed its desire to sentence me below the applicable guidelines, which it now can. The recommended range of supervision terms for my convictions, per the guidelines, is two-to-five years. U.S.S.G. §5D1.2(a)(1).

At 22 months of supervision completed, I will be quite close to a within-range term by the time the briefings here are completed and this Court is properly suited to rule.

Policy on early termination of supervised release recommends early termination in multiple places. Generally, U.S.S.G. §5D1.2 App. N. 5 encourages Courts to grant early termination in appropriate cases, giving the example of an offender who completes substance abuse treatment and thereby reduces her recidivism risk to the community.

Another policy pushes for serious consideration of early termination for offenders who spend too long in prison due to retroactive sentencing reduction provisions that were enacted too late for the offender to benefit from them. U.S.S.G. §1B1.10 App. N.7(B). The First Step Act enabled time-credits to be granted to inmates who complete particular

---

11 According to the statistics listed by the DOJ – Office of Justice Programs website, arrest rates of adults in the U.S. in 2020 was 2808.4 arrests per 100k population, or about 3%. The Arrest Data Analysis Tool shows that the adult female population was approximately 20% less likely to be arrested *per anum* vs. adult men.

Page 10

programming courses, but the DOJ did not enact those time-credits until a year after my release. My sentence, even without the Executive Commutation, would have been almost a year shorter had this been available sooner.

Finally, the Judicial Conference publishes its own policy on early termination of supervised release. That policy directs probation officers to evaluate offenders who have spent more than 18 months on supervision for enumerated six criteria. If an offender meets all six, that policy presumes the supervising officer will recommend the Court to grant early termination. See "Post-Conviction Supervision", Monograph 109, Vol. 8, Part E (updated July 2, 2018; Transmittal 080-040).

The six criteria that make up the test from that policy require the offender to (1) not be a sex offender, career offender, or terrorist; (2) be free of any reported violations in the previous 12 months; (3) not present a risk of harm to the public or any identified individual; (4) demonstrate the ability to lawfully self-manage their lives; (5) be in substantial compliance with all the conditions of supervision; and (6) engage in appropriate prosocial activities and receive prosocial support to remain lawful beyond the period of supervision. See *United States v. Shaw*, 445 F.Supp.3d 1160, 1164 (D. Colo 2020).

And while the policy findings of the Judicial Conference are not binding on the court, they are due, at the very least, respectful consideration. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

I meet all of these six criteria without exception. I am not a career offender, sex offender, or terrorist. I am completely free of all violations of supervision, reported to this court or otherwise, and am in full compliance with all the conditions contained in my Judgment. I fully self-manage a lawful life and will continue to do so long after the period of supervision has expired. Finally, my prosocial support system is incredible. It extends from my amazing friends, to immediate family, extended family, co-workers, and my blessed church family at the Holy Tabernacle in Mt. Vernon.

It may not compel this Court to order one way or the other, but this policy is one more consideration, among many, that promotes early termination here.

Page 11

The final (applicable) sentencing factor addresses sentencing disparities. It is no secret in this case that this Court would have chosen a sentence much shorter than it did were it not for statutory requirements tying its hands. These issues, however, have been thoroughly litigated and do not deserve to command more time in discussion.

For this motion, the sentencing disparities that truly matter involve other cases, similar to my own, for which the defendant was either sentenced to less time on supervision than I was, or more importantly, were granted early termination of supervision.

See, for example, *United States v. McFadden,* No. 2:06-CR-693 (E.D.N.Y., December 5, 2016). There, Defendant McFadden was serving a term of supervised release after being convicted of cocaine distribution. McFadden and was released in an order by Hon. Judge Spatt after serving fifteen months on supervision.

In *United states v. Minaya,* 1:15-CR-549 (S.D.N.Y. May 24, 2021), Defendant Minaya was convicted of distributing heroin and sentenced to four years of supervised release. His §3583(e)(1) motion was granted by Hon. Judge Kaplan after serving only 16 out of 48 months (33% of total sentence served). In another case from 2021, Hon. Judge Broderick released Pequero two years early from his five-year supervision sentence. Judge Broderick cited community reintegration and a spotless record of conduct as 'exemplary conduct.' See *United States v. Pequero,* No. 1:08-CR-823 (S.D.N.Y. March 26, 2021).

Defendant Michael Rose petitioned for early termination in 2019 while serving a term of supervision following a cocaine importation conviction. That motion was granted by Hon. Judge Donnelly in the Eastern District two years before Rose's term expired. *United States v. Rose,* No. 1:17-CR-12, (E.D.N.Y. May 17, 2019).[12]

The interests of justice are served, not offended, by granting early termination here. Such an order would not create a sentencing disparity between my case and others.

---

12 For other, similar cases, see *United States v. Briggs*, No. 1:10-CR-607 (E.D.N.Y. Feb. 06, 2020), *United States v. Banks*, No. 2:14-CR-0303 (E.D.N.Y. May. 29, 2019), *United States v. Alvarez*, No. 1:07-CR-127 (E.D.N.Y. Jan. 03, 2019), *United States v. Minaya*, No. 1:15-CR-549 (S.D.N.Y. May. 24, 2021), *United States v. Santiago*, No. 1:11-CR-569-2 (S.D.N.Y. May. 19, 2021), and *United States v. Parker*, No. 1:08-CR-254 (W.D.N.Y. Jun. 04, 2020).

Mostof these cases involved convictions under 21 U.S.C. §841 or §846 and subject to mandatory minimum supervision terms for which they were released before the minimum term had expired.

Page 12

## IV. CONCLUSION

My exemplary conduct, which goes well above simply staying out of trouble, has been noted on several occasions over the decade or so since my case was reassigned to Your Honor.

Early termination is not the rarity that it used to be, and for good reason. The purposes of supervision are served and, once they have served their purpose, nothing remains but to allow the offender to move onto the next chapter of her life. I pray the Court allow me to do just that.

Signed this 9th day of December, 2022.

/s/ Sharon King
SHARON KING
(347) 659-4197
ColeyNicoleKing@Gmail.com
*Pro Se* Defendant; Movant

> Application for early termination of supervised release is denied. After consideration of all the Section 3553(a) factors, the Court concludes that early release is not warranted. Ms. King's criminal conduct, for which she never accepted responsibility, was extremely serious and she has served less than 40% of her supervised release. And, while Ms. King's compliance with her conditions to date is admirable, it is not sufficient to justify the relief sought here. Compliance is to be expected and early termination would dilute respect for the law.
>
> So Ordered.
> [signature]
> 1/16/23

## Compliance and COVID-19 *Pro Se* Filing Procedures

This pleading is not written in letter-motion format, as I am self-representing as the defendant in this case and am not an attorney admitted to the bar for the Southern District of New York, without access to EM/ECF filing. To the best of my ability, however, this document conforms to L.R.Crim.P. 49.

    COVID-19 adjusted procedures allow this motion to be filed in "paper copy" via e-mail pursuant to the "Notice to Pro Se Litigants" filed by this Court on July 7, 2020. It has been filed by submission to Temporary_Pro_Se_Filing@nysd.uscourts.gov. Additionally, I signed the consent form, and agreed, to receive e-mail service with the accompanying Electronic Notice and Service Consent Form. That Consent Form was, likewise, filed with the temporary *pro se* e-mail address above.

    As ECF participants, opposing counsel has consented to service by electronic means and is therefore properly served when this filing is entered into the public docket. F.R.Civ.P. 5(b)(2)(E).

Page 13